IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MERSAYDES PARSONS,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 3:25-CV-02631-JRK<br><br>JUDGE JAMES R. KNEPP, II<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>**REPORT & RECOMMENDATION** |

## INTRODUCTION

Plaintiff Mersaydes Parsons challenges the Commissioner of Social Security's decision denying her applications for supplemental security income (SSI) and child's insurance benefits (CIB) based on disability. (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter was referred to me under Local Civil Rule 72.2 to prepare a Report and Recommendation. (Non-document entry dated Dec. 4, 2025). For the reasons below, I recommend the District Court **AFFIRM** the Commissioner's decision.

## PROCEDURAL BACKGROUND

Ms. Parsons applied for SSI in March 2023, alleging disability beginning April 30, 2021. (Tr. 196, 210, 217, 287). After the claim was denied initially and on reconsideration, Ms. Parsons requested a hearing before an administrative law judge. (Tr. 64, 74, 98). She then filed an application for CIB in August 2024. (Tr. 217). On October 28, 2024, Ms. Parsons (represented by counsel) and a vocational expert (VE) testified before the ALJ. (Tr. 40-57). On November 26, 2024, the ALJ determined Ms. Parsons was not disabled. (Tr. 15-39). On October 2, 2025, the

Appeals Council denied Ms. Parsons' request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-3; *see also* 20 C.F.R. §§ 404.981, 416.1481). Ms. Parsons timely filed this action on December 4, 2025. (ECF #1).

## FACTUAL BACKGROUND

### I. Personal and Vocational Evidence

Ms. Parsons was 17 years old on her claimed disability date and 21 years old at the hearing. (*See* Tr. 65). She graduated from high school and previously worked as a retail cashier for three months in 2018. (*Id.*).

### II. Relevant Medical Evidence

Ms. Parsons has epilepsy, social anxiety, depression, and autism spectrum disorder. In September 2021, Ms. Parsons sought evaluation and treatment for seizure-like activity, described as three events over the course of five years. (Tr. 330). Her doctor ordered an MRI and an EEG. (Tr. 335). The MRI was normal, but the EEG showed intermittent activity "that may be epileptogenic in nature, or indicate seizure tendency." (Tr. 329-30). Her doctor prescribed Keppra and folic acid. (Tr. 328). Neurology treatment notes thereafter indicate Ms. Parsons tolerated the medication well and did not thereafter have any seizures or episodes of passing out. (Tr. 314, 317, 459, 468, 495).

In January 2023, an occupational therapist assessed Ms. Parsons for suspected autism based on her reported struggles with social interactions and her tendency to hyperfocus or fixate on things and interests. (Tr. 444-45). Of note, Ms. Parsons made little eye contact and maintained the same facial expression ("a broad smile on the cusp of a laugh") throughout the evaluation even when discussing negative topics. (Tr. 446). She described being fearful of getting a job due to her discomfort with "new or sensory rich" environments and "people." (*Id.*). The therapist determined

Ms. Parsons scored "well within the Autism spectrum cut off score" and recommended occupational therapy to address functional independence, sensory integration, feeding, and progression-of-work skills. (*Id.*). In March, after no one contacted Ms. Parsons to set up the recommended therapy, she received a referral from her primary care physician for occupational therapy to address autism spectrum disorder. (Tr. 542).

In September 2023, Ms. Parsons met with an occupational therapist for evaluation and treatment for autism, overactivity, and behavior concerns. (Tr. 437-39). There she reported anxiety, joint attention deficits, a limited frustration tolerance, impulsive behavior, and hypersensitivity to visual, auditory, and tactile stimuli. (Tr. 440, 442). The therapist prepared a treatment plan, including cognitive training and compensatory strategies, to address short-term goals (improve and implement coping strategies, leisure exploration) and long-term goals (improve routines and structure at home, improve behavior). (Tr. 443). Ms. Parsons attended five therapy sessions in September and October 2023. (Tr. 422, 426, 428, 432, 435).

In October 2023, Ms. Parsons attended a consultative disability assessment with Sudhir Dubey, Psy.D. (Tr. 405). During the assessment, Ms. Parsons described feeling irritable and angry without reason. (Tr. 406). She has anxiety and worries about "her physical health and seizures." (*Id.*). Ms. Parsons attended high school through an online program, but before then she generally got along with others in school, though she had a difficult time with teachers. (Tr. 407). She is not currently working "because of her anxiety and its effect on dealing with others and performance," although when she worked briefly in 2018, she always met the basic job expectations and requirements. (*Id.*). Dr. Dubey documented that Ms. Parsons maintained appropriate eye contact, was alert and responsive, had a logical thought process, and did not need directions or questions

repeated. (Tr. 408). Ms. Parsons reported she can perform basic activities of daily living, manage money, take her medications, do paperwork, and maintain a schedule but needs help with shopping because of her anxiety. (Tr. 407). Dr. Dubey's functional assessment is described in Section IV Medical Opinions, below.

Also in October, Ms. Parsons attended a mental health diagnostic assessment where she reported anxiety, paranoia, and feeling consumed with worry about things she cannot control. (Tr. 605). During the interview, Ms. Parsons endorsed good relationships with her mother, father, and siblings, and reported preferring online friends because she did not have to see them in person. (Tr. 605-06). She was actively engaged during the assessment but struggled to answer some of the counselor's questions. (Tr. 609). The evaluator recommended therapy to work on social skills and healthy coping mechanisms. (*Id.*). Ms. Parsons attended mental health counseling sessions in December 2023 and January through May, July, and August 2024. (Tr. 575, 576, 582, 585, 594, 597, 600, 602).

In February, Ms. Parsons was sent for a psychiatric assessment. (Tr. 587). In May, during that evaluation, she reported constant anxiety that worsens in public settings and with social interaction. (Tr. 579). She has anxiety attacks that last a few minutes and were associated with shortness of breath, feeling sick to her stomach and shaky, dizziness, and tingling sensations in her fingers. (*Id.*). She displayed good eye contact, cooperative behavior, clear and coherent speech, a sad and anxious mood with appropriate affect, fair attention and concentration, intact memory, average intelligence, and limited judgment and insight. (Tr. 580). She was diagnosed with major depressive disorder (recurrent episode, moderate), generalized anxiety disorder, social anxiety

disorder, panic disorder, and autism spectrum disorder, and prescribed hydroxyzine for anxiety and insomnia, and escitalopram for mood. (*Id.*).

In July, Ms. Parsons told her counselor she no longer wanted to take psychiatric medications or see the psychiatrist because her mood has been good, she has not been down or depressed lately, her online anxiety has been better and she has been able to talk to others on the phone more, she found two new activities she enjoys (listening to music and sewing), and she uses her coping skills when she feels irritated. (Tr. 576).

In August, Ms. Parsons reported she cannot get a job because she cannot learn tasks due to autism. (Tr. 575). The counselor also documented Ms. Parsons' statement that "she would rather not set herself up for failure that could lead to suicidal ideation" and "is perfectly content where she is." (*Id.*). Thereafter, Ms. Parsons did not respond to voicemails to set more appointments for treatment. (Tr. 573-74).

## III. Medical Opinions

After interviewing Ms. Parsons in October 2023, Dr. Dubey assessed her ability to function in four areas: (1) understanding, remembering, and carrying out instructions; (2) maintaining attention, concentration, persistence, and pace to perform simple and multi-step tasks; (3) responding appropriately to supervision and coworkers in a work setting; and (4) responding appropriately to work pressures in a work setting. (Tr. 409-11). In the first area, Dr. Dubey noted Ms. Parsons did not require directions or questions to be repeated, and her attention, memory, and attitude were generally appropriate during the interview. (Tr. 409). Based on her reported history of poor performance during her time as a cashier and her mood issues, the doctor concluded Ms. Parsons can understand, remember, and carry out simple instructions

independently, but would need supervision and more time for multi-step instructions. (Tr. 410). For the same reasons, Dr. Dubey opined she can maintain attention, concentration, persistence, and pace to carry out simple tasks independently, but would need supervision and more time for multi-step tasks. (*Id.*). Ms. Parsons did not report issues dealing with work supervision or co-workers but based on her reported irritability and anger, she would have some difficulties in dealing with supervision and coworkers. (Tr. 410-11). Last, Dr. Dubey noted that "[i]n the context of this evaluation, a somewhat stressful situation for most, which includes interacting with a new doctor, in a new office, she was generally calm and stable," but determined her reported anxiety would lead to problems with performance and, thus, she would have some difficulties in dealing with work pressure. (Tr. 411).

In November 2023, state agency psychological consultant Amy Johnson, Psy.D., reviewed Ms. Parsons medical records and determined she was mildly limited in understanding, remembering, and applying information and moderately limited in interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing herself. (Tr. 67). Dr. Johnson opined Ms. Parsons can understand, remember, and carry out complex tasks; maintain concentration, persistence, and pace to carry out complex tasks in a work setting that does not involve fast-paced production demands; can interact with coworkers, supervisors, and the public on a brief and superficial basis; and adapt to a work setting where changes in work expectations are infrequent. (Tr. 70-71).

In February 2024, state agency psychological consultant Leslie Rudy, Ph.D., reviewed updated medical records and determined Dr. Johnson's initial assessment was consistent with and supported by the objective evidence on reconsideration. (Tr. 81). Dr. Rudy made "minor changes"

to the RFC for "internal consistency," opining Ms. Parsons can carry out one-to-four-step tasks in a work setting that does not impose fast-paced or high-production demands, can interact with others in the workplace on a brief and superficial basis, and can adapt to occasional changes that are implemented gradually. (*Id.*).

## IV. Hearing Testimony

During the administrative hearing, Ms. Parsons explained she cannot work due to epilepsy, autism, and mental health issues. (Tr. 44). She sleeps three to four hours a night and does not nap during the day. (Tr. 44-45). She does not cook out of fear she will "blow everything up." (Tr. 45). She can do chores inside but does not do outdoor chores because they are too loud and overstimulating. (Tr. 46). Her hobbies are drawing and reading. (*Id.*).

Certain sounds are very irritating and become her sole focus point, causing irritation, aggression, or crying. (Tr. 47). During these mood swings, Ms. Parsons is told she verbally lashes out at others, but she does not recall what she says. (Tr. 48). Ms. Parsons does not go to stores alone because she is scared she will be a victim of violent crime or will have a seizure and no one will be there to save her. (*Id.*). When she is stressed or overstimulated, her focus narrows and she can only concentrate on one thing at a time. (*Id.*). Describing her past work as a cashier, Ms. Parsons admitted not understanding the directions she received and feeling "freaked [] out" by the many different noises in the environment. (Tr. 49). Ms. Parsons also lacks social awareness and finds herself saying things in a way that causes others to get mad at her, though that is not her intent, and then she gets mad that everyone else is mad. (Tr. 50).

## STANDARD FOR DISABILITY

Eligibility for benefits turns on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine whether a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?
2. Did claimant have a medically determinable impairment, or a combination of impairments, which is "severe," defined as one which substantially limits an individual's ability to perform basic work activities?
3. Does the severe impairment meet one of the listed impairments?
4. What is claimant's residual functional capacity and can claimant perform past relevant work?
5. Can claimant do any other work considering his or her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to prove whether the claimant has the residual functional capacity (RFC) to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine whether the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is the claimant deemed disabled. 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

A claimant is entitled to CIB on the earnings record of an insured person who is entitled to benefits (old-age or disability) or who has died if the claimant (1) is the insured person's child, (2) is dependent on the insured, (3) applies for benefits, (4) is unmarried, and (5) is 18 years old or older and has a disability that began before the claimant turned 22 years old. 20 C.F.R. § 404.350(a)(1)-(5).

## THE ALJ'S DECISION

At Step One, the ALJ determined Ms. Parsons had not attained age 22 by April 30, 2021, nor had she engaged in substantial gainful activity since that date. (Tr. 21). At Step Two, the ALJ identified the following severe impairments: generalized anxiety disorder/social anxiety disorder/panic disorder, major depressive disorder, epilepsy/seizures, and autism spectrum disorder. (*Id.*). At Step Three, the ALJ found Ms. Parsons' impairments did not meet or medically equal the requirements of a listed impairment. (Tr. 22-24).

At Step Four, the ALJ determined Ms. Parsons' RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: Postural limitations of no climbing of ladders, ropes, or scaffolds. Environmental limitations to avoid all exposure to moving mechanical parts, commercial driving, and high exposed places. Additional environmental limitations to avoid more than occasional, concentrated exposure to irritants such as fumes, odors, dust, and gases. Can understand, remember and carry out simple instructions, for work not requiring a specific production rate, such as assembly line work, nor work requiring hourly quotas. Capable of using judgement to make simple work-related decisions, with occasional gradually implemented changes in a routine work setting. Capable of occasional interaction with the general public, supervisors, and coworkers. As superficial is not a vocationally defined term, assume that the hypothetical individual is able to be in proximity of others, able to exchange greetings, and able to engage in discussions that do not require persuasion or involve tandem tasks that extend beyond a 30-day training period.

(Tr. 24). At Step Four, the ALJ concluded Ms. Parsons has no past relevant work. (Tr. 33). At Step Five, the ALJ determined Ms. Parsons could perform other work in the national economy, including as a small products assembler, electrical parts assembler, and inspector/hand packager. (Tr. 34). Thus, the ALJ concluded Ms. Parsons was not disabled. (*Id.*).

## Standard of Review

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters,* 127 F.3d at 528. The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). But "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F.App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position,

the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Apart from considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. *Walters,* 127 F.3d at 528. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not follow its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.").

## DISCUSSION

In her sole assignment of error, Ms. Parsons contends the ALJ erred in assessing the RFC by not explaining the reasons for adopting a limitation for occasional interaction with supervisors, coworkers, and the public instead of the state agency reviewers' restriction to superficial interaction with others in the work setting. (ECF #8 at PageID 652).

The RFC is "the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *2 (July 2, 1996). The ALJ is solely responsible for assessing an individual's RFC and must base that assessment on all relevant evidence in the case record, including information about the individual's symptoms and any medical opinions from acceptable medical sources. *Id.*; *see also Coldiron v. Comm'r of Soc Sec.*, 391 F.App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC."). In reviewing medical source statements, the ALJ considers the persuasive value of the opinions in terms of their consistency with other record evidence and the supportability of the opinion—*i.e.*, the evidence and explanations the medical source cites in support of the opinion. 20 C.F.R. §§ 404.1520c(b)(2), (c)(1)-(2); 416.920c(b)(2), (c)(1)-(2). But the ALJ need not incorporate all opined restrictions in a medical opinion, even if the ALJ finds the opinion persuasive. *Nasser v. Comm'r of Soc. Sec.*, 598 F.Supp.3d 614, 626 (E.D. Mich. Mar. 17, 2022). And if the ALJ adopts a medical source's opined limitation, the ALJ need not do so verbatim. *See Reeves v. Comm'r of Soc. Sec.*, 618 F.App'x 267, 275 (6th Cir. 2015). But, as Ms. Parsons correctly notes, if the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the rejected opinion was not adopted. SSR 96-8p, 1996 WL 374184, at *7. The reasons for the ALJ's conclusions must be stated in a manner permitting the reviewing court to "trace the path of the ALJ's reasoning" from evidence to conclusion. *Stacey v. Comm'r of Soc. Sec.*, 451 F.App'x 517, 519 (6th Cir. 2011).

Ms. Parsons contends the ALJ failed to explain why he rejected the opined limitation of superficial interaction in favor of occasional interaction. (ECF #8 at PageID 653). Implicit to her

argument is that the terms "superficial interaction" and "occasional interaction" conflict such that the ALJ must explain adopting one over the other. On that subject, there appears to be a split within the courts that has not been addressed in a published Sixth Circuit decision. Some district courts have found the restrictions differ from one another and "have adopted a fixed vocational definition of 'superficial interaction,' and 'presumed' that this definition is 'qualitatively inconsistent with occasional' interactions." *Stephen D. v. Comm'r of Soc. Sec.*, No. 1:21-cv-746, 2023 WL 4991918, at *6-8 (S.D. Ohio Aug. 4, 2023) (collecting cases), *report and recommendation adopted*, 734 F.Supp.3d 729 (S.D. Ohio May 16, 2024). The courts adopting this line of reasoning define "occasional" as limiting the quantity of time spent interacting and "superficial" as limiting the quality of those interactions. *See, e.g., Hutton v. Comm'r of Soc. Sec.*, No. 2:20-cv-339, 2020 WL 3866855, at *4-5 (S.D. Ohio July 9, 2020), *report and recommendation adopted*, 2020 WL 4334920 (S.D. Ohio July 28, 2020); *Lindsey v. Comm'r of Soc. Sec.*, 2:18-cv-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018), *report and recommendation adopted*, 2019 WL 133177 (S.D. Ohio Jan 8, 2019). They reason that because the terms are defined differently, an ALJ must explain why she translated an opined "superficial interaction" limitation into "occasional interaction" in the RFC. *See Stephen D.*, 2023 WL 4991918, at *6-8 (collecting cases). Accordingly, because "'superficial interaction' is a well-recognized, work-related limitation," these courts have determined that an ALJ's explanation that he declined to adopt such a limitation because "superficial" is vocationally vague or not a vocationally relevant term is insufficient. *Hutton*, 2020 WL 3866855, at *5; *see also Stephen D.*, 2023 WL 4991918, at *6-8 (collecting cases).

Other courts have concluded that the terms "occasional" and "superficial" are not sufficiently conflicting because "time-limited 'occasional' interactions in an unskilled work setting

are reasonably understood to require only surface-level interactions." *Stephen D.*, 734 F.Supp.3d at 738; *see also Metz v. Kijakazi*, No. 1:20-cv-2202, 2022 WL 4465699, at *9-10 (N.D. Ohio Sept. 26, 2022).

Here, it is not necessary to decide whether the terms sufficiently conflict with one another because even if they do, the ALJ adequately explained why he did not adopt the limitation to superficial interaction: "superficial" is not a vocationally defined term and therefore "does not adequately articulate the limitation for use in a residential functional capacity assessment." (Tr. 31). Other courts considering this issue have found similar explanations for not adopting a limitation to superficial interaction to be sufficient. *See, e.g.*, *Culbertson v. Comm'r of Soc. Sec.*, No. 1:24-cv-1847, 2026 WL 696554, at *5 (N.D. Ohio Mar. 12, 2026); *Beulah v. Comm'r of Soc. Sec.*, No. 1:20-cv-2271, 2022 WL 1609236, at *29-31 (N.D. Ohio Mar. 25, 2022), *report and recommendation adopted*, 2022 WL 1606286 (N.D. Ohio May 20, 2022). The ALJ then converted the limitation into "more specific, vocationally defined, and policy compliant language" to effectuate "the moderate limitations arising from the claimant's mental impairments." (Tr. 31). Converting opined limitations into vocationally relevant terms is not improper. *Lopez v. Comm'r of Soc. Sec.*, No. 1:22-cv-1801, 2024 WL 1580101 (N.D. Ohio Apr. 11, 2024).

The ALJ explained that limiting Ms. Parsons to occasional interaction is supported by evidence the state agency reviewers relied on in assessing her functional capacity, including her reported hypersensitivity to visual and auditory stimuli, joint attention deficits, and worries in general. (Tr. 32). Elsewhere in the decision, the ALJ acknowledged Ms. Parsons' testimony that she tends to stay home but concluded she is moderately limited in her ability to interact with others because she also reported getting along with others generally and making friends online, was

routinely cooperative during treatment, and has been able to live with her parents, grandparents, and four siblings. (Tr. 22-23; *see also* Tr. 406). Taken together, the ALJ's explanations are sufficient to allow this Court to trace the path of the ALJ's reasoning to his conclusion that Ms. Parsons can occasionally interact with others. And, considering the entire medical record, substantial evidence supports the ALJ's decision.

In a final effort to obtain reversal of the ALJ's decision, Ms. Parsons' counsel argues the ALJ erred in not to specifically addressing the definition of superficial interaction that counsel provided. (ECF #8 at PageID 654). Before the hearing, Ms. Parsons' counsel submitted a remand ordered issued by the Appeals Council in an unrelated case that states superficial interaction "indicates that the claimant could not have sustained more than shallow, cursory interactions with others." (*See* Tr. 298-301). Ms. Parsons contends the ALJ was required to address this evidence and his failure to do so constitutes reversible error. (ECF #8 at PageID 655-56). This argument is not persuasive.

As other district courts have held, a definition articulated by the Appeals Council in a single unrelated case is not binding on the ALJ in this case. *See, e.g.*, *Jared W. v. Comm'r of Soc. Sec.*, No. 2:22-cv-1786, 2022 WL 17842947, at *6 (S.D. Ohio Dec. 22, 2022) ("[A]n Appeals Council Order is limited in scope to the case specified and does not constitute broad-sweeping Agency action that is binding on the Agency at large or on this Court."), *report and recommendation adopted*, 2023 WL 1960600 (S.D. Ohio Feb. 13, 2023); *Roberts v. Comm'r of Soc. Sec.*, No. 4:25-cv-764, 2026 WL 1551700, at *12 (N.D. Ohio June 2, 2026). As the court in *Jared W.* explained:

> The Social Security Agency could define "superficial interactions," if it chose to do so, in any number of ways. The Social Security Act, as amended, along with Regulations, Social Security Rulings (SSRs), Acquiescence Rulings (ARs), the Program Operations Manual System (POMS), and the Hearings, Appeals, and

> Litigation Law Manual (HALLEX) provide the basic guides for adjudication and review of Social Security claims.

2022 WL 17842947, at *6. Given the absence of any authority to support a finding that the unrelated Appeals Council decision submitted by Ms. Parsons' counsel is binding or persuasive evidence that must be addressed by the ALJ, I conclude the ALJ did not err when he declined to address that non-binding order in his decision.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court **AFFIRM** the Commissioner's decision denying child insurance benefits and supplemental security income.

Dated: October 27, 2026

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## OBJECTIONS, REVIEW, AND APPEAL

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not**

merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-cv-186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).